**Deborah Katz PUESCHEL,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 01–5116.

United States Court of Appeals,
Federal Circuit.

July 31, 2002.

· George M. Chuzi, Kalijarvi, Chuzi & Newman, P.C., of Washington, DC, argued for plaintiff-appellant.

William L. Olsen, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen; Director; and Todd M. Hughes, Assistant Director.

Before MAYER, Chief Judge, RADER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

I

Deborah Katz Pueschel was employed by the Federal Aviation Administration ("FAA") as an air traffic controller between 1974 and 1981, when the FAA fired her for participating in an illegal strike. She appealed her removal to the Merit Systems Protection Board ("MSPB"), seeking reinstatement. After finding that she had not participated in the strike, the MSPB ordered her reinstated with back pay. *Katz v. Dep't of Transp.*, 17 M.S.P.R. 303 (1983). Her back pay award was offset by deductions for, among other things, outside earnings during the period between her firing and her reinstatement, reimbursement of a lump sum annual leave payment, and a refund that Ms. Pueschel received from her retirement account.

While Ms. Pueschel's MSPB appeal was pending, she sought workers' compensation benefits from the Office of Workers Compensation Programs ("OWCP") of the Department of Labor. The Secretary of Labor has designated OWCP to administer the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8101–8193, which provides workers' compensation coverage to federal employees for employment-related injuries and occupational diseases.

The first step in the process of claiming FECA benefits for a work-related injury

or occupational disease is to report it to OWCP using Form CA–2. *See* 20 C.F.R. § 10.101. After receiving a Form CA–2, OWCP analyzes the employee's claim and decides if the claim should be accepted. Acceptance of a claim, however, does not automatically mean that OWCP will pay disability benefits. A condition for which medical benefits are payable may not prevent an employee from working. "Compensation for wage loss due to disability is available only for periods during which an employee's work-related medical condition prevents him or her from earning the wages earned before the work-related injury." 20 C.F.R. § 10.500(a). Whether disability benefits are payable depends on the medical evidence submitted by the claimant. Accordingly, once a claim is accepted, the claimant is advised to file for medical benefits and lost wages using Form CA–7. *See* 20 C.F.R. § 10.102.

Ms. Pueschel submitted a Form CA–2 to OWCP on October 26, 1982. OWCP accepted Ms. Pueschel's claim for disability status on April 23, 1992, retroactive to March 12, 1990, and advised her to file a form CA–7 to claim disability compensation. On October 15, 1993, OWCP orally amended its ruling to extend the retroactivity date back to January 1, 1980.

Ms. Pueschel submitted a Form CA–7 to OWCP on November 10, 1993, seeking benefits for the period of January 1, 1980, to April 27, 1993. In her cover letter, she noted that those dates included leave without pay ("LWOP") during 1981, 1982, and 1983, the years between her removal from the FAA and her reinstatement. In a handwritten attachment to her Form CA–7, Ms. Pueschel provided information about the applicable pay rates during the entire 1980–1993 time period and information about the amounts of sick leave and annual leave she used each year. In addition, she provided information about LWOP and set forth calculations of the amount she believed was due from the Department of Labor attributable to that period, adjusted for the taxes and various deductions that had been assessed on her back pay award. She also submitted a copy of her claim to the FAA, which acknowledged its receipt on November 16, 1993.

On November 9, 1999, Ms. Pueschel filed suit in the Court of Federal Claims, seeking "monies owed to plaintiff by defendant as the result of a decision by the Office of Worker Compensation Programs, U.S. Department of Labor." Specifically, she alleged that her 1984 reinstatement award had been improperly classified as back pay, rather than workers' compensation benefits, and that she was entitled to a refund of $38,163.89 that had been improperly deducted from her 1984 award.

The government moved to dismiss Ms. Pueschel's complaint for lack of jurisdiction. The Court of Federal Claims granted the motion on the ground that 5 U.S.C. § 8128(b) precludes judicial review of a decision of the Secretary of Labor allowing or denying payments pursuant to FECA. While acknowledging that no previous case had addressed the specific factual situation presented by Ms. Pueschel's complaint, the trial court determined that discretionary classifications of the type Ms. Pueschel requested appear to be within the scope of decisions as to which review is barred by section 8128(b). In addition, the court held that Ms. Pueschel's suit was time-barred by 28 U.S.C. § 2501, the six-year statute of limitations for Tucker Act claims.

II

With respect to the trial court's ruling that the action is barred under 5 U.S.C. § 8128(b) because it challenges a workers' compensation decision by the Secretary of Labor, Ms. Pueschel contends that section

8128(b) is inapplicable to her, because Congress never intended that statute to apply to United States citizens. In the alternative, Ms. Pueschel argues that section 8128(b) is inapplicable to this case because she is not seeking judicial review of a decision by the Secretary of Labor regarding disability compensation. Instead, she argues that she is challenging FAA's refusal to reclassify her back pay award as disability pay. We conclude that under either theory of the case the Court of Federal Claims properly dismissed Ms. Pueschel's action for lack of subject matter jurisdiction.

### A

At the outset, we note that it is by no means clear that the OWCP has addressed and rejected Ms. Pueschel's claim for the payment of disability benefits. The OWCP sent Ms. Pueschel a letter dated December 9, 1999, which rejected a claim for leave buy-back, but Ms. Pueschel's counsel contends that the letter did not pertain to the claim that is at issue in this case. It may be, therefore, that OWCP has not yet issued a decision with respect to Ms. Pueschel's claim for additional payments attributable to her period of disability, and that Ms. Pueschel's remedy is to press OWCP for a decision on that claim. Because the trial court treated the claim as having been finally rejected, we will address the legal issue of the trial court's jurisdiction to review such a decision by OWCP. Our decision should not be taken, however, as a legal determination that the OWCP has in fact rejected Ms. Pueschel's claim since, based on the analysis set forth below, we conclude that the Court of Federal Claims would lack jurisdiction whether or not the OWCP has finally rejected her claim.

### B

The Court of Federal Claims viewed Ms. Pueschel's complaint as challenging OWCP's failure to reclassify her back pay award as a disability payment under FECA. Claim disputes under FECA are resolved administratively, and decisions by the Secretary of Labor regarding disability compensation are protected from judicial review by section 8128(b), which contains strong door-closing language:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b). Our predecessor court repeatedly held that section 8128(b) precludes judicial review of disability compensation decisions. *See Chapman v. United States,* 204 Ct.Cl. 815, 816 (1974); *Landman v. United States,* 196 Ct.Cl. 778, 778 (1971); *Collins v. United States,* 194 Ct.Cl. 1037, 1038 (1971); *Nolen v. United States,* 124 Ct.Cl. 230, 109 F.Supp. 391, 392 (Ct.Cl. 1953). In addition, all other courts that have addressed the issue have held that, at least in the absence of a constitutional claim, section 8128(b) precludes judicial review of such decisions. *See, e.g., Czerkies v. United States Dep't of Labor,* 73 F.3d 1435, 1437 (7th Cir.1996) (en banc); *Stephens v. Office of Worker's Compensation Program,* 721 F.2d 642, 642 (8th Cir.1983); *DiPippa v. United States,* 687 F.2d 14, 17 (3d Cir.1982).

 Notwithstanding the clear and unambiguous statutory language of section 8128(b) and the unbroken line of cases construing that language in accordance with its plain meaning, Ms. Pueschel argues that the legislative history of section 8128(b) shows that Congress did not intend to bar judicial review of challenges to disability compensation decisions brought

by United States citizens. Although acknowledging that the door-closing language appears clear on its face, she argues that the legislative history of section 8128(b) indicates that that language arose as an unintended result of a 1945 amendment and a subsequent recodification of title 5. Mrs. Pueschel contends that the decisions cited above are not binding on us because the courts in those cases failed to address the argument that Mrs. Pueschel makes based on the legislative history. We address that argument on the merits, but in the end we are not persuaded that the argument based on the legislative history trumps the clear, preclusive language of the statute.

The 1916 statute that granted workers' compensation to federal employees provided that compensation decisions would be made by an Employment Compensation Commission. The statute was silent with respect to judicial review of the decisions of the Commission. *See* Act of Sept. 7, 1916, 39 Stat. 742. An amendment made in 1924, however, contained the following limitation:

> In the absence of fraud or mistake in mathematical calculation, the finding of facts in, and the decision of the commission upon, the merits of any claim presented under or authorized by this Act if supported by competent evidence shall not be subject to review by any other administrative or accounting officer, employee, or agent of the United States.

43 Stat. 389 (1924). Ms. Pueschel argues that the 1924 amendment did not preclude judicial review of FECA claim decisions, because the amendment referred only to administrative review and because the requirement that a decision be "supported by competent evidence" presupposed some form of review to determine if the decision was adequately supported.

Congress further amended the statute in 1945, when it added the language that

appears in the current version of section 8128(b). The 1945 amendment was concerned with a variety of special problems arising in the aftermath of World War II, including the problem of administering compensation for injuries sustained by noncitizen employees of the federal government who were working outside the United States when they were injured. Section 4 of the Act of July 28, 1945, 59 Stat. 503–04, authorized the Employment Compensation Commission to make compensation awards to foreign employees based on local laws or custom. Section 4 further provided:

> The action of the Commission in allowing or denying any payment under this Act shall be final and conclusive for all purposes and with respect to all questions of law and fact, and not subject to review by any official of the United States, or by any court by mandamus or otherwise.

59 Stat. 504.

Although the 1945 door-closing provision used the broad language "under this Act," Ms. Pueschel argues that its location in section 4 indicates that Congress meant for the preclusion of judicial review to be limited to awards issued under section 4. In support of that assertion, Ms. Pueschel directs us to the House debate. In a colloquy during the debate, Congressman Gwynne asked whether "the last provision applies only to people who are not citizens or residents of this country," to which Congressman Walter, one of the House managers of the bill, replied, "[t]hat is correct." 91 Cong. Rec. 7816 (1945). Mrs. Pueschel also points to a letter from the chairman of the Employment Compensation Commission that was made a part of the Senate report on the 1945 amendment. The letter suggests that the door-closing provision in section 4 of the amendment was intended to apply only to claims by

foreign employees. S.Rep. No. 421, 79th Cong., 1st Sess. 5–6 (1945).

Two decades later, in recodifying Title 5, Congress deleted the requirement that compensation decisions be "supported by competent evidence." Ms. Pueschel argues that the omission was not intended to eliminate the right to judicial review for such decisions, however, because the House committee report issued at the time of the recodification stated that "precautions have been taken against making substantive changes in any statute," H. Rep. No. 89–901, at 2 (1965), and that "there are no substantive changes made .by this bill enacting title 5 into law," *id.* at 3.

Although the sequence of events leading to the current version of section 8126(b) lends some support to Ms. Pueschel's argument that Congress never specifically intended to preclude all judicial review of compensation decisions, the statutory language is to the contrary. In simple, clear, and unambiguous terms, section 8126(b) provides that compensation decisions are "not subject to review ... by a court by mandamus or otherwise." 5 U.S.C. § 8128(b). Indeed, the Supreme Court has singled out section 8128(b) as a model of "unambiguous and comprehensive" language evincing congressional intent to bar judicial review altogether. *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 779–80 & n. 13, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985).

In this case, we are not required to decide whether a clear expression of congressional intent in the form of unambiguous legislative history could ever trump clear statutory language such as that in section 8126(b), because the legislative history of section 8126(b) is not entirely free of ambiguity. For example, the same section 4 of the 1945 amendment that added the door-closing language at issue in this appeal used the phrase "this section" or "this paragraph" three times and the

phrase "this Act" an additional five times. 59 Stat. 503–04. The frequency with which the 1945 amendment used the different phrases "this paragraph," "this section," and "this Act," supports an inference that Congress distinguished between those phrases and used each purposefully. In addition, the import of the House debate upon which Ms. Pueschel relies is not entirely clear. In particular, the discussion of section 4 immediately preceding Congressman Gwynne's question regarding the "last provision" did not mention the provision pertaining to the preclusion of judicial review, but referred only to the expected benefits of that section in saving money and reducing friction and dissatisfaction in providing compensation to noncitizen employees. 91 Cong. Rec. 7816 (1945).

Moreover, contemporaneous judicial decisions held that the door-closing language added by the 1945 amendment applied to all claims for compensation under FECA, even those brought by United States citizens. *See Block v. Community Nutrition Institute,* 467 U.S. 340, 349, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) ("The congressional intent necessary to overcome the presumption [favoring judicial review of administrative action] may also be inferred from contemporaneous judicial construction barring review and the congressional acquiescence in it. . . ."). For example, in *Calderon v. Tobin,* 187 F.2d 514 (D.C.Cir.1951), the District of Columbia Circuit held that where a federal employee had a succession of wives and none of the relationships had been formally dissolved, the 1945 amendment precluded judicial review of the administrative designation of the first wife as the widow entitled to FECA benefits. Similarly, in *Nolen v. United States,* 124 Ct.Cl. 230, 109 F.Supp. 391 (Ct.Cl.1953), the Court of Claims held that the 1945 amendment deprived the court of jurisdiction to review the administrative disability

compensation decisions. Later, in *Blanc v. United States,* 244 F.2d 708 (2d Cir. 1957), the Second Circuit held that the 1945 amendment required the dismissal, for lack of jurisdiction, of the complaint of a federal employee's widow whose claim for FECA benefits had been denied. Ms. Pueschel has not cited, nor have we found, any case holding that the door-closing language inserted by the 1945 amendment applied only to noncitizens or non-residents. Instead, it appears that contemporaneous judicial decisions all interpreted that language to apply to all claims for compensation under FECA, even those brought by U.S. citizens.

■ After a careful review of the legislative history, we conclude that the support it lends to Ms. Pueschel's position is not so clear and compelling as to convince us to adopt an interpretation of section 8128(b) inconsistent with both the clear import of its terms and the contemporaneous judicial interpretation of the door-closing language added by section 4 of the 1945 amendment. Therefore, to the extent that Ms. Pueschel's complaint challenges a decision by the Secretary of Labor regarding her claim for disability compensation, we hold that the Court of Federal Claims properly dismissed her action for lack of jurisdiction.

### III

In the alternative, Ms. Pueschel argues that section 8128(b) does not bar her suit because she is challenging a decision by the FAA, not the Secretary of Labor. Specifically, she argues that she is challenging the FAA's refusal to reclassify her back pay as a disability payment and to refund the amounts improperly deducted from her 1984 award. Under that theory, she argues, her claim is not against OWCP, but against the FAA for its denial of payment based on the April 23, 1992, OWCP decision accepting her claim for disability status.

The factual underpinnings of Ms. Pueschel's theory are somewhat less than clear. Although she contends that she submitted a copy of her Form CA–7 to the FAA, the form itself is addressed and directed to the attention of OWCP. Furthermore, the handwritten attachment to that form characterizes her claim for an LWOP adjustment for the period 1981–84 as an "amount due from DOL," which presumably refers to the Department of Labor's OWCP rather than the FAA. It is thus difficult to determine what, if anything, the FAA "denied" when her claim appears to have been directed solely to OWCP. Moreover, the duty to pay disability benefits is OWCP's, not the employing agency's. Therefore, it is unclear how the FAA could be obligated to pay the amount that Ms. Pueschel contends is owed to her on account of her alleged entitlement to disability payments during the period of her removal.

■ Even if Ms. Pueschel were correct that her claim for disability payments can be characterized as a claim for recalculation of her 1984 back pay award from the FAA, the Court of Federal Claims would not have jurisdiction to adjudicate her claim. To the extent that Ms. Pueschel is seeking an increased recovery under the 1984 award she received based on the MSPB's decision that she was improperly removed from her position, her claim would necessarily be one for enforcement of the MSPB's order reversing her removal and awarding back pay, a matter that is within the exclusive jurisdiction of the MSPB.

■ The Civil Service Reform Act of 1978 ("CSRA") grants the MSPB authority to enforce compliance with its orders. In particular, 5 U.S.C. § 1204 provides that the MSPB shall:

(1) hear, adjudicate, or provide for the hearing or adjudication, of all matters within the jurisdiction of the Board under this title, chapter 43 of title 38, or any other law, rule, or regulation, and, subject to otherwise applicable provisions of law, take final action on any such matter;

(2) order any Federal agency or employee to comply with any order or decision issued by the Board under the authority granted under paragraph (1) of this subsection *and enforce compliance with any such order;*

5 U.S.C. § 1204(a)(1)-(2) (emphasis added). We have previously interpreted section 1204(a) as constituting a "broad grant of enforcement power" for the MSPB to ensure that agencies restore improperly discharged employees to the status quo ante. *Kerr v. Nat'l Endowment for the Arts,* 726 F.2d 730, 733 (Fed.Cir.1984). The MSPB thus has authority to adjudicate the merits of petitions for enforcement alleging error by an agency in awarding back pay pursuant to an MSPB order reversing a personnel action. *See Worthington v. United States,* 168 F.3d 24, 27 (Fed.Cir.1999) ("[T]he Board has jurisdiction over claims for back pay if it has (or had) jurisdiction over the underlying claim."); *Spezzaferro v. FAA,* 24 M.S.P.R. 25 (1984).

This court has long held that the Court of Federal Claims does not have jurisdiction over a case that could be heard by the MSPB. *McClary v. United States,* 775 F.2d 280, 282 (Fed.Cir.1985) ("Where an employee is provided a means of redress under the CSRA, that is, an appeal to the Board, the employee does not have an independent cause of action in the Claims Court."). *See generally United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (holding that the Civil Service Reform Act gives the MSPB exclusive responsibility for adjudicating rights of federal employees subject to removal and other personnel actions); *Worthington,* 168 F.3d at 26 (*"Fausto* deprives the Court of Federal Claims of jurisdiction over personnel actions covered by the CSRA."). Thus, because the MSPB has jurisdiction over claims to enforce back pay awards, it follows that the Court of Federal Claims does not.

If Ms. Pueschel has any action against the agency for an additional recovery attributable to her improper removal, she would have to petition the MSPB for enforcement of its prior reinstatement order under 5 C.F.R. § 1201.182. In the event that she chooses to follow that route at some future time, we express no opinion as to the timeliness of such a petition or whether the MSPB would have the authority to alter her back pay award on the ground that she should have been granted a larger total award based on an entitlement to workers' compensation payments during the period of her removal. What is clear is that jurisdiction to address such a claim does not lie in the Court of Federal Claims. We therefore uphold that court's decision dismissing the complaint for lack of jurisdiction.

*AFFIRMED.*