# United States Court of Appeals for the Federal Circuit

2007-3309

MARIO A. GONZALEZ,

Petitioner,

v.

DEPARTMENT OF TRANSPORTATION,

Respondent.

Sean Lafferty, Lafferty & Lafferty, of Burlington, Massachusetts, for petitioner.

Carrie A. Dunsmore, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. With her on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director. Of counsel was A. Bondurant Eley, Trial Attorney.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2007-3309

MARIO A. GONZALEZ,

Petitioner,

v.

DEPARTMENT OF TRANSPORTATION,

Respondent.

On appeal from the Merit Systems Protection Board in PH-0752-05-0262-C-1.

_____

DECIDED:  January 8, 2009

_____

Before RADER and DYK, <u>Circuit Judges</u>, and WALKER[*], <u>Chief District Judge</u>.

Opinion for the court filed by <u>Circuit Judge</u>, RADER.  Dissenting opinion filed by <u>Circuit Judge</u>, DYK.

Mario Gonzalez petitioned the Merit Systems Protection Board to enforce a prior final judgment in his favor against the Department of Transportation ("DOT").  In that prior judgment, the Board awarded Mr. Gonzalez back pay for an improper separation from his job as an air traffic controller.  The Board, however, denied Gonzalez's petition for enforcement.  Because the Board correctly concluded that 49 U.S.C. § 40122 does not grant jurisdiction for back pay awards to Federal Aviation Administration ("FAA") employees, this court affirms.  Further, because Gonzalez's claim to back pay raises jurisdictional issues of sovereign immunity, this court finds that the Board did not err in entertaining a collateral attack on its previous award of back pay to this petitioner.

---

[*] Honorable Vaughn R. Walker, Chief Judge, United States District Court for the Northern District of California, sitting by designation.

I.

The FAA appointed Gonzalez as an air traffic controller in 1971. In February, 2005, the agency terminated Mr. Gonzalez's employment based on the belief that he was subject to mandatory separation under 5 U.S.C. § 8335(a) upon reaching the age of 56. Mr. Gonzalez challenged this removal to the Board. The Board's administrative judge reversed the removal in an initial decision. Gonzalez v. Dep't of Transp., PH-0752-05-0262-C-1 (M.S.P.B. June 30, 2005). From this date, the FAA placed Mr. Gonzalez on interim relief, returning him to duty and pay status pending adjudication of the agency's petition for review. Upon review, however, the Board reversed the initial decision and remanded the appeal to the administrative judge for a hearing. Gonzalez v. Dep't of Transp., 101 M.S.P.R. 416 (2006).

On August 3, 2006, the administrative judge issued an initial decision again reversing the FAA's involuntary separation of Gonzalez. The administrative judge found that Gonzalez had commenced employment as an air traffic controller before enactment of the mandatory separation provision. Gonzalez v. Dep't of Transp., PH-0752-05-0262-C-1 (M.S.P.B. Aug. 3, 2006). The judge ordered the agency to "pay appellant by check or through electronic funds transfer for the appropriate amount of back pay" and to "inform appellant in writing of all actions taken to comply with the Board's Order and the date on which it believes it has fully complied." Id. at 8. Under this ruling, the Agency owed Mr. Gonzalez roughly five months of back pay. The FAA did not petition for review. Thus, this decision became final on September 7, 2006.

2007-3309                             2

On November 6, 2006, the FAA informed Gonzalez that it did not intend to comply with the back pay award. Instead the Agency relied on the Board's decision in Ivery v. Department of Transportation, 102 M.S.P.R. 356 (2006). In Ivery, the Board held it did not have jurisdiction to order the FAA to pay back pay to employees because the FAA is not subject to the Back Pay Act, 5 U.S.C. § 5596. Id. at 361. The Board had decided Ivery on June 22, 2006—before the September 7, 2006 deadline for the agency to appeal the Board's August 3, 2006 decision in favor of Gonzalez.

On November 27, 2006, Gonzalez filed a petition to enforce the Board's August 3 decision. The Board's administrative judge found that the Board's previous remedy in favor of Mr. Gonzalez was incorrect based on Ivery. Gonzalez v. Dep't of Transp., PH-0752-05-0262-C-1 (M.S.P.B. Mar. 29, 2007). Upon Gonzalez's petition for review of this decision, the full Board summarily affirmed. Gonzalez v. Dep't of Transp., PH-0752-05-0262-C-1 (M.S.P.B. June 25, 2007).

In his appeal to this court, Gonzalez challenges the underlying holding in Ivery. Gonzalez also contends that the MSPB, in deciding it lacked jurisdiction to award back pay, erred by entertaining a collateral attack on the merits of its earlier final decision. This court has jurisdiction over Gonzalez's timely appeal under 5 U.S.C. § 7703.

II.

This court may set aside a decision of the Board only when it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). The Board's jurisdiction to

adjudicate a particular appeal presents a question of law, which this court reviews without deference. See King v. Briggs, 83 F.3d 1384, 1387 (Fed. Cir. 1996).

The Department of Transportation Appropriations Act of 1996 charged the FAA with creating a new personnel management system that "addresses the unique demands on the agency's workforce." Pub. L. No. 104-50, § 347, 109 Stat. 436, 460 (1995), as amended by Pub. L. No. 104-122, § 1, 110 Stat. 876, 876 (1996) ("DOT Act"). To determine the Board's jurisdiction to award back pay to FAA employees, this court must construe the statutory language of 49 U.S.C. § 40122, which codifies § 347 of the DOT Act. See Bazalo v. West, 150 F.3d 1380, 1382 (Fed. Cir. 1998). This court affords those statutory terms their "ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." Williams v. Taylor, 529 U.S. 420, 431 (2000) (internal quotation marks omitted). In the absence of ambiguity, the meaning of the statutory language governs. See Cox v. West, 149 F.3d 1360, 1363 (Fed. Cir. 1998) (quoting Freytag v. Comm'r, 501 U.S. 868, 873 (1991) ("When we find the terms of a statute unambiguous, judicial inquiry should be complete except in rare and exceptional circumstances.")).

Because Gonzalez's claim invokes the Back Pay Act, 5 U.S.C. § 5596, which involves a waiver of the government's sovereign immunity, this court must strictly construe the relevant provisions of § 40122 in favor of the government. Lane v. Pena, 518 U.S. 187, 192 (1996). In Lane, the Supreme Court stated:

> A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign. To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such

monetary claims. A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; the unequivocal expression of elimination of sovereign immunity that we insist upon is an expression in statutory text.

Id. (quotation marks and citations omitted). Thus, this court may only sustain Gonzalez's claim if the unambiguous text of § 40122 shows that the United States has waived sovereign immunity to award back pay to FAA employees like the petitioner.

III.

The language of § 40122 states: "[t]he provisions of Title 5 shall not apply to the new personnel management system developed and implemented" by the FAA. 49 U.S.C. § 40122(g)(2). The Back Pay Act falls in Title 5 and may only operate in favor of FAA employees if § 40122 grants an exception. While § 40122(g)(2) lists eight exceptions to the FAA's exemption from Title 5, none of these exemptions includes the Back Pay Act, under which Gonzalez seeks relief. This omission is of no small consequence. "'Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied in the absence of evidence of a contrary legislative intent.'" Espenschied v. Merit Sys. Prot. Bd., 804 F.2d 1233, 1237 (Fed. Cir. 1986) (quoting Andrus v. Glover Constr. Co., 446 U.S. 608, 616-17 (1980)). With the additional obligation to construe this proposed waiver of sovereign immunity strictly, this court cannot create an exception that makes the Back Pay Act available to FAA employees where the language of § 40122 denies that remedy.

Gonzalez endeavors to navigate around the Title 5 exclusion by referring to some ambiguous legislative history of § 40122. The Wendell H. Ford Aviation Investment and Reform Act of the 21st Century, Pub. L. No. 106-181, 114 Stat. 61 (2000) (codified at 49 U.S.C. § 40122(g)(3)) ("Ford Act") retroactively reinstated FAA

employees' rights to appeal adverse agency personnel actions to the Board. The DOT Act had divested those rights to appeal to the Board. See Coradeschi v. Dep't of Homeland Sec., 439 F.3d 1329, 1332 (Fed. Cir. 2006). The Ford Act amended the statute to add, inter alia, subsection g(3), which provides:

> Under the new personnel management system developed and implemented under paragraph (1), an employee of the Administration may submit an appeal to the Merit Systems Protection Board and may seek judicial review of any resulting final orders or decisions of the Board from any action that was appealable to the Board under any law, rule, or regulation as of March 31, 1996.

49 U.S.C. § 40122(g)(3); see also S. Rep. No. 106-9, at 36 sec. 425 (1999) (noting the purpose of restoring "the right of FAA employees to submit appeals to the MSPB"). This language does not purport to restore any remedy under the Back Pay Act. Gonzalez, however, argues that the Ford Act's restoration of rights to appeal to the Board without the corresponding authority to award back pay would render those appeals meaningless.

To the contrary, this legislative history does not alter the meaning of § 40122. In the first place, the Supreme Court has cautioned that "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text." Lane, 518 U.S. at 192. Thus, this court may not conjecture about the reasons for the Ford Act's restoration of Board appeal rights beyond the meaning of the statutory language itself. As noted before, that language does not refer to the Back Pay Act at all, let alone expressly waive sovereign immunity for its application to FAA employees.

Thus, while the Ford Act provides FAA employees with rights to appeal to the Board, those appeals are still expressly part of and fall "[u]nder the new personnel management system developed and implemented under paragraph (1)." 49 U.S.C. §

40122(g)(3). The Ford Act did not alter the requirement that "[t]he provisions of title 5 shall not apply to the new personnel management system developed and implemented pursuant to paragraph (1)." Id. § 40122(g)(2). Moreover, the Ford Act did not create an exception to this exclusion of Title 5 rights that would encompass the Back Pay Act. In sum, this court cannot infer a waiver of sovereign immunity that § 40122 expressly forbids. Thus, back pay awards for FAA employees must come under the "new personnel management system," not from MSPB awards.

Gonzalez's position is made further untenable by the back pay provision contained in the FAA's personnel management system. The FAA has provided that:

> Agency funds may be used to pay back pay to an FAA employee or former employee who, as the result of a decision or settlement under the FAA Grievance Procedure, a collective bargaining agreement, FAA Appeals Procedure, or the Executive System Appeals Procedure is found by an appropriate authority to have been affected by an unjustified or unwarranted personnel action that resulted in the withdrawal, reduction, or denial of all or part of the pay, allowances, and differentials otherwise due to the employee.

FAA Personnel Management System (PMS), Chapter II: Compensation, Section 9(a), available at https://employees.faa.gov/org/staffoffices/ahr/policy_guidance/hr_policies/ pms/pmsch2/#comp9 (emphasis added). The FAA's omission of Board appeals from its list of four procedural avenues under which back pay may be awarded is glaring. Just as this court cannot read between the lines to imply an exemption for the Back Pay Act from the text of § 40122(g), this court must refrain from making a similar deduction regarding the agency's own regulation. See Martinez v. United States, 333 F.3d 1295, 1306 (Fed. Cir. 2003) (en banc) ("The 'limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.'").

2007-3309                                          7

Thus, the unambiguous language of § 40122 governs Gonzalez's claim. Under that language, Gonzalez, like all FAA employees, may not seek back pay under the Back Pay Act. To the extent that FAA employees like Gonzalez seek back pay, they must comply with the agency's own personnel management system which provides four different procedural avenues for that kind of claim.

This court must honor, especially in the context of a waiver of sovereign immunity, the principle of <u>expressio</u> <u>unius</u> <u>est</u> <u>exclusio</u> <u>alterius</u>. Without express language in § 40122(g) that excludes 5 U.S.C. § 5596, the Back Pay Act, from the general inapplicability of Title 5, the Board is correct to deny that remedy to FAA employees.

IV.

This court also notes that 5 U.S.C. § 1204 is listed in 49 U.S.C. § 40122(g)(2)(H) as an exception to the bar against applying Title 5 to FAA employees. Section 1204, however, does not provide the Board authority to award back pay independent of the Back Pay Act. Section 1204(a)(2) is an "[a]ncillary" provision that endows the Board with authority to enforce its own orders in cases where it properly has jurisdiction. <u>See</u> <u>King v. Reid</u>, 59 F.3d 1215, 1217 (Fed. Cir. 1995) ("Ancillary to the board's power to adjudicate actions is the board's authority to enforce its own orders [under § 1204(a)(2)]."). In <u>King</u>, this court explained that § 1204(a)(2) provides the Board power "to enter and enforce its own orders . . . under the board's retained jurisdiction . . . ." <u>Id.</u> at 1218. This aspect of § 1204(a)(2) is evident from its face because it grants the Board the power to "enforce compliance" with "any order or decision issued by the Board." 5 U.S.C. § 1204(a)(2).

In Kerr v. National Endowment for the Arts, 726 F.2d 730 (Fed. Cir. 1984), this court provided context to the scope of enforcement power granted by § 1204. The Board in Kerr had directed the NEA to comply with an initial decision cancelling Kerr's termination. Id. at 733. NEA subsequently returned Kerr to his former position at the same grade and pay, but Kerr alleged that the new position was a sham and that he had been divested of his real job. Id. at 732. The Board held that its authority over the matter of compliance ended when Kerr was restored to his former position at the same grade and pay. This court vacated, reading § 1204 (originally numbered 5 U.S.C. § 1205) as "a broad grant of enforcement power." Id. at 733. This power included the authority to "make a substantive assessment of whether the actual duties and responsibilities to which the employee was returned are either the same as or substantially equivalent in scope and status to the duties and responsibilities held prior to the wrongful discharge." Id. Thus, Kerr stands for the proposition that § 1204 grants the Board broad authority to enforce its own remedies. See, e.g., Pueschel v. United States, 297 F.3d 1371, 1378 (Fed. Cir. 2002) (citing § 1204 and Kerr for the proposition that the Board "has authority to adjudicate the merits of petitions for enforcement alleging error by an agency in awarding back pay pursuant to an MSPB order reversing a personnel action [and granting back pay].") Notably, Kerr provides no guidance as to when the Board should grant particular remedies (such as back pay) in the first instance.

Nor does Worthington v. United States, 168 F.3d 24 (Fed. Cir. 1999), stand for the proposition that § 1204 independently grants the Board authority to award back pay. In fact, Worthington does not even cite § 1204. Moreover, the petitioner in Worthington

argued that "[T]he Back Pay Act [not § 1204] entitles him to compensation." Id. at 26. Thus, Worthington had no opportunity to comment on whether § 1204 provides an independent avenue for awarding back pay. Regardless, one issue addressed in this case was whether the Board could hear Worthington's back pay claim when it did not have jurisdiction over his underlying claim. This court answered in the negative: "the Board has jurisdiction over claims for back pay if it has (or had) jurisdiction over the underlying claim." Id. at 27. In other words, the Board can only hear back pay claims if it has jurisdiction over the underlying claim. This statement cannot fairly be read to mean that the Board has inherent jurisdiction to award back pay whenever it has jurisdiction over the underlying claim.

Wallace v. Office of Personnel Management, 283 F.3d 1360 (Fed. Cir. 2002), squarely demonstrates that § 1204(a)(2) cannot provide the Board a basis for granting back pay independent of the Back Pay Act. In Wallace, this court held that it could not authorize back pay interest on the petitioner's retirement benefits because "the Back Pay Act does not authorize payment of interest on back payments of retirement benefits." Id. at 1362. This court observed that the Board had ordered Wallace's back retirement pay restored under § 1204(a)(2), but this court had no occasion to decide whether this underlying award had been appropriate because the only issue on appeal was whether interest on this award was forthcoming under the Back Pay Act. Id. at 1364. Indeed, if § 1204 were a basis for back pay remedies independent of the Back Pay Act, this court could have ordered the Board to award back pay interest under § 1204, but it did not, mindful of this court's precedents regarding the Board's limited jurisdiction and sovereign immunity principles. See, e.g., Antolin v. Dep't of Justice,

895 F.2d 1395, 1396 (Fed. Cir. 1989) ("The jurisdiction of the MSPB is not plenary, but is limited to those areas specifically granted by statute or regulation."); Lane, 518 U.S. at 192 ("a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."). In sum, without an unequivocal waiver of sovereign immunity to grant back pay awards, this court would not presume to venture to create new monetary rights.

Section 1204 is not a fount of remedial authority that can provide the Board jurisdiction to grant back pay where it would otherwise lack it. Section 1204(a)(2) only ensures the Board that it may enforce orders for which it has statutory authority, and, in the case of monetary awards, an unequivocal waiver of sovereign immunity. In this instance, the Board has neither independent jurisdiction nor a waiver of sovereign immunity to grant back pay to FAA employees.

If the Board's determinations about back pay awards were divorced from the Back Pay Act, cases such as Smith v. Department of the Army, 458 F.3d 1359, 1366 (Fed. Cir. 2006) (determining time period for which Back Pay Act permits compensation), and Martin v. Department of the Air Force, 184 F.3d 1366, 1371 (Fed. Cir. 1999) (analyzing Back Pay Act to determine "whether the Board must look at the cause of a disability before excluding the period of time a wrongfully terminated employee was disabled and unable to work from the back pay period"), would become dead letters. Indeed, Congress authorized the Office of Personnel Management ("OPM") to "prescribe specific regulations to carry out the Back Pay Act." Martin, 184 F.3d at 1370 (citing 5 U.S.C. § 5596(c)). Under this authority, OPM has issued implementing regulations concerning various aspects of back pay computation. See 5

C.F.R. § 550.801 et seq. If the Back Pay Act is not a necessary basis for the Board's award of back pay, this suggests the Board is free to disregard OPM's regulations and award back pay subject to some undefined, broad plenary power to award back pay inherent in § 1204. This would violate the statutory language and this court's precedent.

V.

Gonzalez's appeal further requires this court to consider whether the Board's March 29, 2007 decision that it lacked jurisdiction to award back pay constituted an improper collateral attack on its earlier final judgment of August 3, 2006. Under Board regulations, an initial decision becomes final 35 days after issuance, unless a party files a petition for review or the Board reopens the case on its own motion. See 5 C.F.R. § 1201.113. Because the agency did not file a petition for review, and the Board did not reopen the case on its own motion, the August 3, 2006 initial decision awarding back pay to Gonzales became final on September 7, 2006.

In most circumstances, a party may not collaterally attack a final judgment on the ground that subject matter jurisdiction was lacking in the original action, even if the issue of subject matter jurisdiction was not litigated before. See Ins. Corp. of Ir., Ltd. v. Compagnie Des Bauxites de Guinee, 456 U.S. 694, 702 (1982) ("It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal."). However, one notable exception to this general rule arises where the issuing court's lack of jurisdiction "directly implicat[es] issues of sovereign immunity." Int'l Air Response v. United States, 324 F.3d 1376, 1380 (Fed. Cir. 2003); see also Christopher Vill., L.P. v. United States, 360 F.3d 1319, 1329-1330 (Fed. Cir. 2004). This court's jurisprudence regarding the sovereign immunity exception to the

rule against collaterally attacking final judgments derives largely from <u>United States v. U.S. Fidelity & Guaranty Co.</u>, 309 U.S. 506 (1940) ("<u>USF&G</u>").

In <u>USF&G</u>, the United States, as trustee for an Indian tribe, had suffered an adverse monetary judgment in a first action against a coal company, yet did not appeal this holding. <u>Id.</u> at 510. In a second suit, when the coal company's surety attempted to enforce this judgment, the United States raised a sovereign immunity argument to collaterally attack the first judgment. <u>Id.</u> at 511. The Supreme Court sustained the collateral attack:

> As no appeal was taken from this [first] judgment, it is subject to collateral attack only if void. It has heretofore been shown that the suability of the United States and the Indian Nations, whether directly or by cross-action, depends upon affirmative statutory authority. <u>Consent alone gives jurisdiction to adjudge against a sovereign. Absent that consent, the attempted exercise of judicial power is void. The failure of officials to seek review cannot give force to this exercise of judicial power</u>. Public policy forbids the suit unless consent is given, as clearly as public policy makes jurisdiction exclusive by declaration of the legislative body.

<u>Id.</u> at 514 (emphasis added). Thus, because the district court lacked jurisdiction to award money damages against the government, the initial judgment was void.

In the instant case, Gonzalez's claim to back pay directly implicates the government's sovereign immunity. <u>See</u> <u>Mattern v. Dep't of Treasury</u>, 291 F.3d 1366, 1369 (Fed. Cir. 2002) ("The Back Pay Act operates as a waiver of sovereign immunity to provide complete monetary relief to . . . employees.") (quoting <u>Curlott v. Campbell</u>, 548 F.2d 1175, 1181-82 (9th Cir. 1979)). As this court holds above, no FAA employee can show that the United States has expressly waived its sovereign immunity for an award of back pay by the Board. "Absent that consent," the August 3, 2006 judgment awarding back pay to Gonzalez was void, and "[t]he failure of [FAA] officials to seek

review cannot give force to this exercise of [the Board's] power." See USF&G, 309 U.S. at 514.

Although this court does not condone the agency's failure to file a timely challenge to the administrative judge's initial decision awarding back pay, that decision was void ab initio under controlling case law. Therefore, the Board did not err in allowing the government to collaterally attack the final judgment in the context of an enforcement proceeding implicating sovereign immunity principles.

## CONCLUSION

This court affirms the Board's conclusion that it lacks jurisdiction to provide Mr. Gonzalez with back pay. Further, because the sovereign immunity issues presented by this case present a rare exception to the rule of finality, this court also affirms the Board's procedural ruling permitting the government to collaterally attack its prior judgment.

## AFFIRMED

## NO COSTS

# United States Court of Appeals for the Federal Circuit

MARIO A. GONZALEZ,

Petitioner,

v.

DEPARTMENT OF TRANSPORTATION,

Respondent.

On appeal from the Merit Systems Protection Board in PH-0752-05-0262-C-1.

DYK, Circuit Judge, dissenting.

The majority holds that employees of the Federal Aviation Administration ("FAA"), alone among federal employees, may not secure back pay when appealing adverse actions to the Merit Systems Protection Board ("Board"). In my view, this anomalous approach is contrary to the statute and to our prior precedent, and deprives FAA employees of a crucial remedy for improper agency action.

Even assuming that the majority is correct in holding that the Back Pay Act, 5 U.S.C. § 5596, does not apply to FAA employees, we have previously held that the Board has the authority to award back pay under 5 U.S.C. § 1204 without regard to the Back Pay Act. Wallace v. OPM, 283 F.3d 1360, 1364 (Fed. Cir. 2002). The majority decision is inconsistent with Wallace, and with earlier cases culminating in Wallace.

I

Title V of the United States Code generally governs the rights of Federal government employees to challenge adverse actions taken by the employing agency. 5 U.S.C. § 702. Section 1204 of Title V grants jurisdiction to review such actions, and the Back Pay Act separately authorizes the Board to award back pay. In 1995, Congress

enacted the Department of Transportation and Related Agencies Appropriation Act of 1996 (Appropriations Act of 1996), Pub. L. No. 104-50, § 347, 109 Stat. 436 (1995), which authorized the creation of an independent personnel management system administered by the FAA and exempted it from the vast majority of Title V, including provisions granting jurisdiction to the Board and the Back Pay Act.[1]  Thus, under the Appropriations Act of 1996, FAA employees did not have the right to appeal to the Board.

In 2000, Congress enacted the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("Ford Act"), Pub L. No. 106-181, § 307(a), 114 Stat. 61 (2000), and restored the Board's jurisdiction over appeals by FAA employees.  The Ford Act provided:

> The provisions of title 5 shall not apply to the new personnel management system . . . with the exception of . . . sections 1204,

---

[1]      Section 347 of the Appropriations Act of 1996 provides in relevant part:

(a) In consultation with the employees of the Federal Aviation Administration and such non-governmental experts in personnel management systems as he may employ, and notwithstanding the provisions of title 5, United States Code, and other Federal personnel laws, the Administrator of the Federal Aviation Administration shall develop and implement, not later than January 1, 1996, a personnel management system for the Federal Aviation Administration that addresses the unique demands on the agency's workforce.  Such a new system shall, at a minimum, provide for greater flexibility in the hiring, training, compensation, and location of personnel.

(b) The provisions of title 5, United States Code, shall not apply to the new personnel management system developed and implemented pursuant to subsection (a), with the exception of--

 (1) section 2302(b), relating to whistleblower protection;
 (2) sections 3308-3320, relating to veterans' preference;
 (3) section 7116(b)(7), relating to limitations on the right to strike;
 (4) section 7204, relating to antidiscrimination;
 (5) chapter 73, relating to suitability, security, and conduct;
 (6) chapter 81, relating to compensation for work injury; and
 (7) chapters 83-85, 87, and 89, relating to retirement, unemployment compensation, and insurance coverage.

(c) This section shall take effect on April 1, 1996.

> 1211-1218, 1221, and 7701-7703, relating to the Merit Systems Protection Board.
>
> * * *
>
> Under the new personnel management system . . . <u>an employee of the Administration may submit an appeal to the Merit Systems Protection Board</u> and may seek judicial review of any resulting final orders or decisions of the Board from any action that was appealable to the Board under any law, rule, or regulation as of March 31, 1996.

Pub L. 106-181, § 307(a), 114 Stat. 124-26 (emphases added); <u>see also</u> <u>id.</u> § 308, 114 Stat. 126. The new statute explicitly made § 1204 applicable to FAA appeals. The purpose of these provisions was to "reinstate the statutory requirement for the FAA to adhere to merit system principles and restore the right of FAA employees to submit appeals to the [Board]."[2] While the 2000 legislation explicitly referenced § 1204, it did not explicitly reference the Back Pay Act, and, as the majority holds, the statutory language appears to make the Back Pay Act inapplicable. Nonetheless, for years after passage of Ford Act the FAA did not contest the authority of the Board to award back pay, and the Board routinely awarded back pay in FAA cases, as it did originally in this very case. <u>Gonzalez v. Dep't of Transp.</u>, PH-0752-05-0262-C-1, slip op. at 1-2 (M.S.P.B., March 29, 2007); <u>see, e.g.</u>, <u>Thomson v. Dep't of Transp.</u>, 92 M.S.P.R. 392 (2002).

However, on June 22, 2006, the Board <u>sua sponte</u> decided it did not have the authority to award back pay to FAA employees. <u>Ivery v. Dep't of Transp.</u>, 102 M.S.P.R. 356 (2006). The Board reasoned that because the Back Pay Act was not specifically referenced in the exceptions listed in the Ford Act and the Appropriations Act of 1996,

---

[2] S. REP. NO. 106-9, at 36 (1999) (Report of the Committee on Commerce, Science, and Transportation on S. 82, the Air Transportation Improvement Act of 1999, § 425 of which is a version of what would become § 308 of the Ford Act).

the Board did not have authority to award back pay. Id. at 360-61. The Board conceded that "[i]t may have been an oversight by Congress to restore Board appeal rights to FAA employees without also restoring the right of a successful appellant to be awarded back pay" but reasoned that "the doctrine of sovereign immunity will not allow the Board to assume that authority in the absence of the required explicit waiver of that immunity." Id. at 362.

The appellant in Ivery sought review in this court, but the case became moot because "[appellant had] received his back pay and, at oral argument, the Government specifically stated that it was waiving any right to recoup any of the back pay that [appellant] received." 240 F. App'x 413, 415 (Fed. Cir. 2007). Until today, this court has not had an opportunity to review the doctrine developed by the Board in Ivery.

The problem with the Ivery decision and the majority decision here is that the Ford Act specifically states that § 1204 applies to FAA employees, 49 U.S.C. § 40122(g)(2)(H), and this court, its predecessors, and the Supreme Court have long interpreted § 1204 and similar provisions to authorize the Board and its predecessors to award back pay. The Back Pay Act is simply unnecessary for this purpose.

II

The Civil Service Commission ("CSC"), the predecessor to the Board, had the authority to award back pay long before the Back Pay Act of 1966 or predecessor legislation was passed. In Lellmann v. United States our predecessor court, the Court of Claims, held that "[i]t is not necessary to cite authorities to establish the proposition that where a person is unjustly suspended in the exercise of official duty, and the power having jurisdiction of him as an employee annuls such suspension, that the party is

entitled to whatever emoluments there might be due him during the time of such suspension." 37 Ct. Cl. 128, 135 (1902) (emphases added). The Supreme Court affirmed this doctrine in United States v. Wickersham, citing Lellmann with approval and holding that "[w]e see no reason . . . where the wrongful suspension is clearly established . . . for withholding from him the compensation given by law to an incumbent of the place." 201 U.S. 390, 399 (1906).

In fact, Congress itself did not regard the Back Pay Act as necessary to the award of back pay. The Back Pay Act of 1966 was conceived as "basically perfecting legislation." H.R. REP. NO. 89-32, at 2 (1965) (report on the Back Pay Act of 1965, a prior version of the 1966 Act). Congress recognized "[m]ost adverse personnel actions where backpay is justified are already covered in some way by current authorities and the principal of backpay as a part of corrective action is well established." Id. (emphasis added). The purpose of the Back Pay Act is merely to fill "gaps in coverage," not to remove entitlement to back pay for any employees. Id. Thus, it is clear from the legislative history of the Back Pay Act, that the Act was intended only to supplement, not to supplant, the authority to award back pay. For example, the Back Pay Act broadened the scope of the remedies available to include interest and attorney's fees. See Wallace, 283 F.3d at 1364 (back pay available under 5 U.S.C. § 1204 but interest only available under the Back Pay Act, 5 U.S.C. § 5596).

III

While past decisions differ as to the authority of the CSC or the Board to award back pay under other statutes,[3] our court has consistently ruled that the Board has authority to award back pay under § 1204 without regard to the Back Pay Act. Section 1204 dates back to 1978, when Congress enacted the Civil Service Reform Act ("CSRA"), Pub L. No. 95-454, 92 Stat. 1111, which included 5 U.S.C. § 1204 (originally numbered 5 U.S.C. § 1205). Section 1204 states in relevant part, as amended:

> (a) The Merit Systems Protection Board shall ---
> (1) hear, adjudicate, or provide for the hearing or adjudication, of all matters within the jurisdiction of the Board under this title, chapter 43 of title 38, or any other law, rule, or regulation, and, subject to otherwise applicable provisions of law, take final action on any such matter;
> (2) order any Federal agency or employee to comply with any order or decision issued by the Board under the authority granted under paragraph (1) of this subsection and enforce compliance with any such order;

In the beginning, the Board erroneously believed that, even under the broad language of 5 U.S.C. § 1204, the Board did not have the authority to order an agency to award back pay or to review any agency decision not to award back pay. See, e.g., Solga v. Dep't of the Army, 12 M.S.P.R. 656, 658 (1982); Allen v. Dep't of the Navy, 13 M.S.P.R. 521, 523-24 (1982). But, as petitioner points out, this court reached a different conclusion.

This court first corrected the error in Kerr v. National Endowment for the Arts, 726 F.2d 730, 732-33 (Fed. Cir. 1984). In Kerr, the Board held that, once the appellant was

---

[3] Compare Goodwin v. United States, 118 F. Supp. 369, 371 (Ct. Cl. 1954) (finding authority to award back pay under the Veterans Preference Act), with Hubbard v. MSPB, 205 F.3d 1315, 1318-19 (Fed. Cir. 2000) (finding no authority to award back pay before a 1994 amendment to the Whistleblower Protection Act).

returned "to active duty in his former position" the Board had no jurisdiction to consider whether any further remedy was appropriate. Id. at 732. This court disagreed, and held that "Congress expressly granted the Board special power to enforce compliance with its orders" under § 1204, and that the remedy should be to "place the employee as nearly as possible in the status quo ante." Id. at 732-33. We analogized the remedial powers of the Board to that of the National Labor Relations Board, and stated that "the basic purpose of a reinstatement or back pay order is restoration of the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination." Id. at 733 (internal quotation omitted). The majority interprets Kerr as addressing only the Board's "broad authority to enforce its own remedies" and not "when the Board should grant particular remedies (such as back pay) in the first instance." Maj. op. at 9. However, Kerr plainly addresses "the MSPB's remedial powers" and includes citation to Supreme Court caselaw for the proposition that "the compensation shall be equal to the injury." 726 F.2d at 733 n.3 (citing Wicker v. Hoppock, 73 U.S. (6 Wall.) 94, 99 (1867)).

Contrary to the majority's interpretation, the Board understood the language and reasoning of Kerr as speaking clearly to the availability of back pay under § 1204. The Board viewed Kerr as rejecting Board precedent that the Board lacked the authority in the first instance to award back pay. The Board overruled its prior decisions and interpreted § 1204 to grant the Board the authority to award back pay. Spezzaferro v. FAA, 24 M.S.P.R. 25 (1984). In Spezzaferro, the Board analyzed the history and text of § 1204 at length, and discussed the authority of the predecessor CSC to award back pay. Id. at 27-30. Because the CSC had authority to award back pay, before the enactment of the Back Pay Act, the Board also had authority to award back pay without

relying on the Back Pay Act.  Id. at 27-28 (citing Goodwin, 118 F. Supp. at 371).  As the Board stated, "back pay is the most important element of relief next to reinstatement . . . [and is] necessary to effectuate the purpose of both the Board's reinstatement order and the Congressional intent that the Board's enforcement power be broad."  Id. at 28.

More recent cases have confirmed this view of § 1204, citing Kerr and Spezzaferro with approval.  In Worthington v. United States we cited Spezzaferro for the proposition that "the Board has jurisdiction over claims for back pay if it has (or had) jurisdiction over the underlying claim."  168 F.3d 24, 27 (Fed. Cir. 1999).  We held in Worthington that the Board did not have jurisdiction under the Federal Employees Flexible and Compressed Work Schedules Act, 5 U.S.C. §§ 6120-6133, to award back pay because there was no adverse action over which the Board had jurisdiction.  "Being forced to work a compressed work schedule does not, for example, constitute a removal, a suspension, a reduction in grade or pay, a furlough, or a reduction-in-force, as enumerated in [provisions granting the Board jurisdiction]."  Id. at 27.  Although Worthington did not directly present the question of whether back pay was authorized under § 1204 because there was no adverse action, the court in Worthington reaffirmed the basic principle that Board jurisdiction over back pay was coextensive with Board jurisdiction over the adverse action.

Thus, at the time that the Ford Act was passed in 2000, existing case law recognized the authority of the Board to award back pay under § 1204, and traditional canons of statutory construction suggest that we should interpret the Ford Act to continue that authority.  See Lorillard v. Pons, 434 U.S. 575, 580-81 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and

. . . [where] Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."). There is, in any event, no suggestion in the history of the Ford Act that Congress intended to deny the Board the longstanding authority to award back pay, or any possible reason that Congress would wish to deny the Board the authority to award back pay in adverse action cases.

Following the enactment of the Ford Act we continued to recognize the Board's authority to award back pay under § 1204. In Pueschel v. United States, 297 F.3d 1371, 1378 (Fed. Cir. 2002), the petitioner had received a back pay award from the Board. She brought suit in the Court of Federal Claims, asserting that the FAA had improperly refused to treat the back pay award as an award of disability benefits (with the result that supposedly improper deductions were made from the back pay award). Id. at 1372. We held that the court lacked jurisdiction because the Board had exclusive jurisdiction over back pay awards under § 1204. Id. at 1378. We stated:

> We have previously interpreted section 1204(a) as constituting a broad grant of enforcement power for the MSPB to ensure that agencies restore discharged employees to the status quo ante. The MSPB thus has authority to adjudicate the merits of petitions for enforcement alleging error by an agency in awarding back pay pursuant to an MSPB order reversing a personnel action.

Id. (emphasis added and citations omitted). We thus specifically recognized that the Board's authority to adjudicate back pay disputes originates under § 1204; we did not even mention the Back Pay Act. Id.; see also Lary v. U.S. Postal Serv., 493 F.3d 1355, 1357 (Fed. Cir. 2007) ("On its face, [§ 1204(a)(2)] does not limit the Board's authority to any particular means of enforcing compliance with its orders or prevent it from ordering

specific performance."). The clear logic of these cases culminated in Wallace, which in my view is inconsistent with the majority's decision here. 283 F.3d at 1364.

In Wallace, a retired employee had been awarded back pay by the Board, but he claimed that he was entitled to interest on the back pay. Id. at 1360. We first concluded that the Back Pay Act did not cover the appellant because "as a retired employee, [appellant is] not an 'employee' covered by the [Back Pay] Act." Id. at 1362. We held that the Board was only authorized to award the appellant back retirement pay "pursuant to the Board's enforcement authority under 5 U.S.C. § 1204(a)(2)," and that no interest could be awarded since the Back Pay Act was inapplicable. Id. at 1364. Thus, the predicate for our holding was that § 1204 authorized the award of back pay, a predicate inconsistent with the majority's decision here.

IV

Thus, in my view, the Board has authority to award back pay to FAA employees pursuant to § 1204. In restoring the authority of the Board to award relief under § 1204, Congress plainly contemplated that all the available remedies under § 1204, including back pay, would be available. Because 5 U.S.C. § 1204 grants the Board the authority to award back pay to FAA employees, I would reverse the decision of the Board and remand with instructions that the Board appropriately enforce its order awarding back pay to Gonzalez. I respectfully dissent from the majority's decision to affirm the Board, and to hold that back pay cannot be awarded under § 1204.