Opinion for the court filed by Circuit Judge TARANTO.
Opinion concurring in part and dissenting in part filed by Circuit Judge O’MALLEY.
TARANTO, Circuit Judge.
The plaintiffs in this case — the “controllers” — are or were employed by the Federal Aviation Administration as air-traffic-control specialists or traffic-management coordinators. The controllers sued the United States in the Court of Federal Claims, alleging that the FAA’s policies governing how to compensate them when they worked overtime failed to comply with the time-and-a-half-payment requirement of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 207. They sought damages under 29 U.S.C. § 216(b) and invoked the court’s jurisdiction under the Tucker Act, 28 U.S.C. § 1491. The Court of Federal Claims ruled in the controllers’ favor, holding that the agency’s personnel policies are contrary to the FLSA and are not authorized by any other provision of law.
We reject the Court of Federal Claims’ essential premise — that no provision authorizes the FAA to depart from the FLSA’s overtime-pay provision. We hold that the FAA has such authority under particular provisions of the federal personnel laws, 5 U.S.C. §§ 5543 and 6120-6133. We therefore vacate the judgment of the Court of Federal Claims and remand the case for further proceedings to determine whether the challenged FAA policies are fully, or only partly, within the authority of those title 5 exemptions from the FLSA.
BACKGROUND
A
The FLSA generally requires that, when a nonexempt employee works more than forty hours per week, the employer must pay the employee for the overtime hours at a rate of one-and-a-half times the employee’s regular rate of pay. 29 U.S.C. § 207(a)(1). Unless modified by other statutes, that provision has applied, since 1974, to federal employees like the controllers. Id. § 203(e)(2). But title 5 of the United States Code, which governs federal employment specifically, includes several exceptions to the FLSA’s overtime-pay requirement. The exceptions relevant to this case concern “compensatory time” and “credit hours” for certain employees.
Section 5543(a)(1) of title 5 provides that, in the case of irregular or occasional overtime, a federal agency may provide “compensatory time” instead of money as compensation if the employee so requests: rather than pay dollars (at a time-and-a-half rate), the agency may provide time off (on a one-to-one basis, ie., the same number of hours off as the overtime worked). 5 U.S.C. § 5543(a)(1). Sections 6120-6133 of title 5 address employees who work flexible schedules rather than traditional forty-hour workweeks, authorizing two forms of non-cash compensation for such employees. First, the provisions authorize an agency to grant an employee compensatory time off for overtime hours, in lieu of payment, at the request of the employee. Id. §§ 6123(a)(1), 6121(6). Second, the provisions authorize the grant of “credit hours,” which are “any hours, within a flexible schedule established under section 6122 of this title, which are in excess of an employee’s basic work requirement and which the employee elects to work so as to vary the length of a workweek or a workday.” Id. § 6121(4). The employee can *1366 use credit hours “to reduce the length of the workweek or another workday” without forfeiting pay or using leave. Id. § 6122(a)(2). An employee may accumulate up to 24 credit hours in one pay period, id. § 6126(a), and if the employee stops working a flexible schedule, the agency must pay for those hours at the employee’s current rate of pay, id. § 6126(b).
Before 1996, the FAA relied on the exemptions contained in title 5 for the authority to compensate the controllers with compensatory time and credit hours in lieu of FLSA-mandated overtime pay. Then, in late 1995, Congress passed the Department of Transportation and Related Agencies Appropriations Act, 1996 (“Appropriations Act”), which authorized several reforms to the FAA’s operations that were to take effect in 1996. Pub.L. No. 104-50, § 347, 109 Stat. 436, 460 (1995), codified as amended at 49 U.S.C. § 40122(g). Two provisions are important here. Section 40122(g)(1) directed the FAA to develop a new personnel policy to provide the agency “greater flexibility” in determining employee compensation and other matters:
In consultation with the employees of the Administration and such non-governmental experts in personnel management systems as he may employ, and notwithstanding the provisions of title 5 and other Federal personnel laws, the Administrator shall develop and implement, not later than January 1, 1996, a personnel management system for the Administration that addresses the unique demands on the agency’s workforce. Such a new system shall, at a minimum, provide for greater flexibility in the hiring, training, compensation, and location of personnel.
49 U.S.C. § 40122(g)(1) (emphases added). And Section 40122(g)(2) provides:
The provisions of title 5 shall not apply to the new personnel management system developed and implemented pursuant to paragraph (1), with the exception of—
(A) section 2302(b), relating to whis-tleblower protection, including the provisions for investigation and enforcement as provided in chapter 12 of title 5;
(B) sections 3308-3320, relating to veterans’ preference;
(C) chapter 71, relating to labor-management relations;
(D) section 7204, relating to antidis-crimination;
(E) chapter 73, relating to suitability, security, and conduct;
(F) chapter 81, relating to compensation for work injury;
(G) chapters 83-85, 87, and 89, relating to retirement, unemployment compensation, and insurance coverage;
(H) sections 1204, 1211-1218, 1221, and 7701-7703, relating to the Merit Systems Protection Board; and
(I) subsections (b), (c), and (d) of section 4507 (relating to Meritorious Executive or Distinguished Executive rank awards) and subsections (b) and (c) of section 4507a (relating to Meritorious Senior Professional or Distinguished Senior Professional rank awards)....
Id. § 40122(g)(2) (emphasis added).
In response to those directives, the FAA developed and implemented a new personnel management system that would take effect April 1, 1996. In so doing, the agency concluded that the language of section 40122(g) permitted it to incorporate into the new system certain provisions of title 5 relating to overtime compensation that it had relied on for modification of FLSA requirements before the Appropria *1367 tions Act. See Abbey et al. v. United States (Abbey III), 106 Fed.Cl. 254, 260 (2012). The agency concluded: “Although [the Appropriations Act] exempts the new personnel system from substantially all of Title 5, [the] FAA has the discretion to adopt the substance of any portion of Title 5 as deemed appropriate.” J.A. 1009.
Soon after the FAA implemented its new system, Congress enacted the Federal Aviation Reauthorization Act of 1996, Pub.L. No. 104-264, §§ 201-30, 110 Stat. 3213, 3232 (Oct. 9, 1996) (“Reauthorization Act”). The Act added the following to 49 U.S.C. § 106(Z):
Except as provided in [subsections (a) and (g) of section 40122], the Administrator is authorized, in the performance of the functions of the Administrator, to appoint, transfer, and fix the compensation of such officers and employees, including attorneys, as may be necessary to carry out the functions of the Administrator and the Administration. Infixing compensation and benefits of officers and employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in section 40122(a), nor shall the Administrator be bound by any requirement to establish such compensation or benefits at particular levels.
49 U.S.C. § 106(l XI) (emphases added).
Under its newly adopted personnel management system, the FAA continued to provide compensatory time for certain hours worked beyond its employees’ regular work schedules. Abbey III, 106 Fed.Cl. at 263. When a manager directed an employee to work overtime, that employee could choose to earn compensatory time in lieu of cash compensation. Id. Although FAA policy limited a controller to 160 compensatory hours, in practice the FAA allowed accumulation of more. J.A. 89. Between 1998 and May 2007, compensatory time had no use-or-lose expiration date. Abbey III, 106 Fed.Cl. at 263. In May 2007, however, the government’s policies changed — compensatory time earned before that date would expire by May 14, 2010, and any new compensatory time had to be used within one year. Id.
The FAA also permitted its employees working a flexible work schedule to earn credit hours. Id. at 261-62. An employee could elect to work beyond his or her normal workweek in exchange for credit hours, with one credit hour earned for each above-the-normal-week hour worked. Id. at 262. The employee could use the credit hours only to take time off at a later date and could not receive cash value for them. Id. Between 1998 and September 3, 2006, the agency imposed no cap on the number of credit hours an employee could accrue; after that date, an employee could accrue only 24 credit hours; and if a controller had accrued more than 24 credit hours before September 2006, that employee could retain those credit hours but could not accrue additional credit hours until the balance of unused credit hours fell below 24. Id. On October 1, 2009, the FAA discontinued its use of credit hours. Id.
B
On May 1, 2007, the controllers filed a four-count complaint in the Court of Federal Claims. The complaint invokes the court’s jurisdiction under the Tucker Act based on the claim for money under the damages provision of the FLSA, 29 U.S.C. § 216(b). Count II of the complaint, the only count at issue in this appeal, alleges that the United States violated the FLSA by paying the controllers in the form of compensatory time or credit hours, rather than in money at a time-and-a-half rate, for hours worked in excess of forty hours a *1368 week. The United States, agreeing that the court had jurisdiction, moved to dismiss the count for failure to state a claim (a motion then treated as a motion for summary judgment), and the controllers moved for summary judgment of government liability. See Abbey v. United States (Abbey I), 82 Fed.Cl. 722, 728 (2008).
On July 31, 2008, the Court of Federal Claims granted the controllers’ motion for summary judgment on count II (and denied the government’s motion), holding that the FAA had no authority to depart from the overtime-pay requirement of the FLSA, 29 U.S.C. § 207(a), by providing compensatory time or credit hours to employees, even at their request, in place of time-and-a-half pay. Id. at 745. The court concluded that the express statutory exceptions to the FLSA, including 5 U.S.C. §§ 5543 and 6120-6133, did not apply to the controllers. Id. at 743. Because sections 5543 and 6120-6133 are not listed “among the exceptions to the express provision of 49 U.S.C. § 40122(g)(2) that ‘[t]he provisions of title 5 shall not apply to [the FAA’s] new personnel management system,’ ” the court reasoned, the FAA could not rely on those provisions for authority to grant employees compensatory time off at a 'straight time rate. Id. at 731-32. The court read the phrase “shall not apply” to mean that no title 5 provisions were available to the FAA — neither provisions that constrained the FAA nor provisions that empowered the FAA — other than those specifically enumerated in 49 U.S.C. § 40122(g)(2). Id. at 731-32.
The court also rejected the government’s argument that, even apart from sections 5543(a)(1) and 6123(a)(1) of title 5, the agency was given authority to act contrary to the FLSA overtime-pay requirement by 49 U.S.C. §§ 40122(g)(1) and 106(Z). Abbey I, 82 Fed.Cl. at 733. As described above, section 40122(g)(1) authorized the FAA to create a personnel management system that “provide[d] for greater flexibility” in the compensation of personnel, and section 160(0 authorized the FAA to set compensation and benefit guidelines for FAA employees without being “bound by any requirement to establish such compensation or benefits at particular levels.” The Court of Federal Claims determined that those provisions did not authorize departure from the command of FLSA if, as the court had concluded, no other provision countermanded that command. Id. at 734-38. Finally, the court concluded that 29 U.S.C. § 204(f), which authorizes the Office of Personnel Management to administer the FLSA for federal employees, does not authorize the government to override the applicability of otherwise-applicable FLSA provisions like the overtime-pay requirement. Id. at 739-42.
Having concluded that the FLSA’s overtime-pay command applied to the FAA, the court held that the FAA’s practice of using compensatory time and credit hours was unlawful. Id. at 745. The court subsequently reached a final judgment on the controllers’ claim to damages. Abbey et al. v. United States, No. 1:07-cv-272-ECH (Fed.Cl. Sept. 7, 2012), ECF 287. The government appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).
DlSCuSSION
A
The threshold question is whether the Court of Federal Claims had jurisdiction over the controllers’ claims. The Tucker Act grants the court jurisdiction over a nontort monetary claim “against the United States founded ... upon ... any *1369 Act of Congress.” 28 U.S.C. § 1491(a)(1).[1] As the courts have held at the government’s urging for three decades, since soon after the FLSA was extended to the federal government by the Fair Labor Standards Amendments Act of 1974, Pub.L. No. 93-259, § 6(a), 88 Stat. 55, 58 (1974), the Tucker Act applies to a claim against the government under the monetary-damages provision of the FLSA, 29 U.S.C. § 216(b). See Graham v. Henegar, 640 F.2d 732, 734 (5th Cir.1981) (noting that “[t]he Government ... argues that ... the Tucker Act is the sole basis of jurisdiction” over FLSA actions against the government for damages under 29 U.S.C. § 216(b), the court agrees and orders transfer to Court of Claims of claim for more than $10,000); Beebe v. United States, 226 Ct.Cl. 308, 640 F.2d 1283, 1288-89 (1981); see also Waters v. Rumsfeld, 320 F.3d 265, 270-72 (D.C.Cir.2003); El-Sheikh v. United States, 177 F.3d 1321, 1324 (Fed.Cir.1999); Saraco v. United States, 61 F.3d 863, 866 (Fed.Cir.1995); Parker v. King, 935 F.2d 1174, 1177-78 (11th Cir.1991); Zumerling v. Devine, 769 F.2d 745, 748-49 (Fed.Cir.1985).[2] Under this straight-forward logic and 30-year-old, multi-circuit, apparently unbroken precedent, the Court of Federal Claims had jurisdiction here.
Before filing this appeal, the government agreed that the Court of Federal Claims had jurisdiction over this case under the Tucker Act. It now argues, however, that the Supreme Court’s decision in United States v. Bormes, — U.S. -, 133 S.Ct. 12, 184 L.Ed.2d 317 (2012), makes so great a change in analyzing Tucker Act jurisdiction that it requires overturning the longstanding, government-supported interpretation that the Tucker Act applies to FLSA damages cases against the United States, even though Bormes did not involve the FLSA. We disagree.
The Supreme Court in Bormes confirmed that Tucker Act jurisdiction can be “displaced” by other statutes that themselves lay out remedial schemes that are sufficiently complete to imply that they “supersede!]” the Tucker Act as a basis for suing the United States. 133 S.Ct. at 18. The Court relied on various precedents that bar “an additional remedy in the Court of Claims ... when it contradicts the limits of a precise remedial scheme.” Id. The Court found the Fair Credit Reporting Act to be such a scheme, because, among other things, it gives jurisdiction to identified courts — including “any appropriate United States district court,” 15 U.S.C. § 1681p — and hence “ ‘precisely define[s] the appropriate forum.’ ” Id. at 19 (quoting Hinck v. United States, 550 U.S. 501, 507, 127 S.Ct. 2011, 167 L.Ed.2d 888 (2007)). Thus, the Fair Credit Reporting Act itself “enables claimants to pursue in court the monetary relief contemplated by *1370 the statute” without any resort to the Tucker Act, id. — indeed, in a forum (district court) not available under the Tucker Act for claims over $10,000. In that context, “any attempt to append a Tucker Act remedy to the statute’s existing remedial scheme interferes with its intended scope of liability.” Id. at 20.
That ruling and its rationale do not extend to this FLSA suit. In sharp contrast to the statute at issue in Bormes, the FLSA contains no congressional specification of a non-Tucker Act forum for damages suits, or any other basis, from which one can infer that application of the Tucker Act would override choices about suing the government embodied in the remedial scheme of the statute providing the basis for liability. That statute-specific conclusion takes this FLSA case outside the reach of the Bormes principle.
In 1974, Congress unmistakably provided for judicial imposition of monetary liability on the United States for FLSA violations. (In Bormes, in contrast, the government contested, and the Court left open, whether the Fair Credit Reporting Act subjected the United States to damages suits for its violation. 133 S.Ct. at 20.) The 1974 Congress expanded FLSA coverage to “any individual employed by the Government of the United States.” 29 U.S.C. § 203(e)(2)(A); see also id. § 203(d) (“Employer”). It provided that “[a]ny employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected.” Id. § 216(b). And it added:
An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

Id.

The crucial language — “any Federal or State court of competent jurisdiction”— does not specify a forum that is contrary to that specified by the Tucker Act. In this respect, it differs critically from the Fair Credit Reporting Act. Indeed, given that, in the FLSA, Congress plainly meant to subject the United States to damages suits for violations (a disputed point for the statute at issue in Bormes), the fairest reading of section 216(b) is that it affirmatively invokes the forum specification for those damages suits found outside the four corners of the FLSA. The Tucker Act is the only available specification that has been identified. Thus, not only does the FLSA embody no choices about remedy that might be impaired by Tucker Act coverage; it is best read as affirmatively, if implicitly, invoking such coverage.
In its oral argument to the Supreme Court in Bormes, the government noted the possible distinction of the FLSA from the Fair Credit Reporting Act by quoting 29 U.S.C. § 216(b) and observing that “it’s possible to read that statute as essentially incorporating the Tucker Act as setting forth what the court of competent jurisdiction would be.” Tr. of Oral Argument, United States v. Bormes, — U.S. -, 133 S.Ct. 12, 184 L.Ed.2d 317 (2012) (No. 11-192), 2012 WL 4506576, at *9. We think that this is the best reading. With section 216(b) so plainly having authorized damages suits against the United States, it is natural to read the provision as implicitly specifying a forum (the Tucker Act forum) in order to complete the waiver of sovereign immunity, given the background principle that waivers of sovereign immunity are generally tied to particular courts. See United States v. Shaw, 309 U.S. 495, 501, 60 S.Ct. 659, 84 L.Ed. 888 (1940); *1371 Minnesota v. United States, 305 U.S. 382, 388, 59 S.Ct. 292, 83 L.Ed. 235 (1939); McElrath v. United States, 102 U.S. 426, 440, 16 Ct.Cl. 630, 26 L.Ed. 189 (1880); U.S. Marine, Inc. v. United States, 722 F.3d 1360, 1365-66 (Fed.Cir.2013).
We long ago adopted this reading. We explained that the jurisdictional language of the FLSA “require[s] one to look elsewhere to find out what court, if any, has jurisdiction.” Zumerling, 769 F.2d at 749. The United States reiterated the point in its brief in the Saraco case in 1994:
In a suit against the Federal Government pursuant to section 216(b), however, there is no reason to construe the term “court of competent jurisdiction” as extending to courts lacking Tucker Act jurisdiction. Where the Federal Government is sued for damages or back pay, the court of competent jurisdiction can only be one exercising Tucker Act jurisdiction, i.e., the [Court of Federal Claims], or, for claims less than $10,000, a district court.
Brief for Defendants-Appellees, Saraco v. United States, 61 F.3d 1321 (1995) (No. 94-3388), 1994 WL 16181941, at *8. The government added that “the FLSA cannot be viewed as a waiver of sovereign immunity independent of the Tucker Act” and endorsed the trial court’s conclusion that “ ‘[t]he waiver of sovereign immunity applicable to [FLSA] claims is found in the Tucker Act.’ ” Id.
The inquiry into displacement, or super-session, does not incorporate a rigid rule that, for a statute to displace the Tucker Act, the statute must itself create an alternative remedy and identify a forum. For example, the Supreme Court in Nichols v. United States held that Congress, without itself designating a forum, clearly specified that the remedy for challenged collections of customs duties was not a suit against the United States but suits against individual customs officers (which require no waiver of sovereign immunity, such waivers generally being court-specific). 7 Wall. (74 U.S.) 122, 131, 130, 19 L.Ed. 125 (1868); see Cary v. Curtis, 44 U.S. 236, 240, 3 How. 236, 11 L.Ed. 576 (1845); Remedies Against the United States and Its Officials, 70 HaRV. L. Rev. 827, 838-40 (1957). The crucial point for present purposes is that there is no basis, in any forum specification or otherwise, for finding that Congress in the FLSA made a remedial choice that explicitly or implicitly displaces Tucker Act suits — which, rather, the FLSA is best read as affirmatively approving.
This conclusion is not only what we think is the best view of the FLSA when examined through the lens of Bonnes. It is also supported by a consistent body of precedent from this court and others, apparently not meaningfully challenged or criticized over a 30-year span beginning soon after Congress extended the FLSA to authorize money suits against the United States for its violation. With the statutory analysis readily allowing the interpretation, this body of statutory precedent, though from outside the Supreme Court, is entitled to substantial weight. See, e.g., Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 733, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).
The weight of this particular body of precedent is especially great because of the regular, uncontested practice under it. For decades, a significant number of judgments have been rendered against the United States under section 216(b), year in and year out, and the Department of the Treasury has recorded them annually with — at least for the last decade, perhaps longer — the forum identified as the “CT *1372 OF CLAIMS.”[3] Moreover, since 1981, Congress has acted a number of times to amend both the FLSA and statutes that modify the FLSA specifically for federal employees.[4] FLSA duties imposed on the United States, enforced under the Tucker Act for more than three decades, are part of a legal field regularly tended by Congress.
For these reasons, like the Court of Federal Claims, see, e.g., Barry v. United States, 113 Fed.Cl. 774 (2013), we conclude that the Supreme Court’s decision in Bornes does not call for a different result from the one that our precedent prescribes for this case. See Conforto v. MSPB, 713 F.3d 1111 (Fed.Cir.2013) (analyzing new Supreme Court decision to identify whether it called for departure from our precedent on an issue not squarely decided by the new decision); Doe v. United States, 372 F.3d 1347, 1354-56 (Fed.Cir.2004); Texas Am. Oil Corp. v. U.S. Dep’t of Energy, 44 F.3d 1557, 1561 (Fed.Cir.1995) (en banc).
B
On the merits, the question before us is whether the FAA had authority to implement a personnel management system that conflicts with the FLSA. We approach the question in two steps. We ask first whether such authority exists apart from any continuing authority under 5 U.S.C. §§ 5543 and 6120-6133. Concluding that it does not, we next ask whether those particular title 5 provisions provide such authority.
1
We agree with the Court of Federal Claims that unless 5 U.S.C. §§ 5543 and 6120-6133 continue to authorize a departure from the money-payment overtime command of the FLSA, the FAA cannot act contrary to that command. As the government agrees, the controllers are employees who are protected by the FLSA. In order for the FAA’s policy of compensatory time and credit hours to be lawful, some other statutory provision must exempt the FAA from complying with 29 U.S.C. § 207(a). We conclude that the government has identified no such provision if 5 U.S.C. §§ 5543 and 6120-6133 are unavailable to the FAA as exemption authority.
*1373 The government has invoked two statutory provisions apart from 5 U.S.C. §§ 5543 and 6120-6133. One is in the FLSA itself, 29 U.S.C. § 204(f), which provides for OPM implementation for federal employees. The other is 49 U.S.C. § 40122(g)(l)’s authorization to the FAA to create a personnel management system that provides “greater flexibility in ... compensation.” Neither of those provisions, standing alone (ie., putting aside 5 U.S.C. §§ 5543 and 6120-6133), can override the FLSA’s requirement that employees who work overtime must be compensated with money at a rate of at least one and a half times their regular rate of pay.
Section 204(f) plainly contains no authorization for any departure from the FLSA’s command regarding overtime pay. It simply designates OPM as the agency responsible for implementing the FLSA as it applies to federal employees. It says nothing that allows OPM to override the FLSA’s substantive constraints. In the absence of any text providing otherwise, OPM’s implementation authority must be exercised within the clear constraints set by the statute it administers. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
We also conclude that 49 U.S.C. § 40122(g)(1) does not itself authorize override of the straightforward, specific command of 29 U.S.C. § 207(a). Section 40122(g)(1) does not meet the high standards for what would amount to an implied repeal. See, e.g., Hui v. Castaneda, 559 U.S. 799, 809-10, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010); Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 381, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); Morton v. Mancari, 417 U.S. 535, 550, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); Posadas v. Nat’l City Bank of N.Y., 296 U.S. 497, 503, 56 S.Ct. 349, 80 L.Ed. 351 (1936); Wood v. United States, 41 U.S. 342, 363, 16 Pet. 342, 10 L.Ed. 987 (1842). That conclusion is reinforced by the principle that “ ‘the specific governs the general.’ ” RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. -,-, 132 S.Ct. 2065, 2071, 182 L.Ed.2d 967 (2012).
Section 40122(g)(1) is not in irreconcilable conflict with the FLSA’s overtime requirement. To the contrary, if it were unambiguously clear that Congress meant in section 40122(g)(2) to eliminate the FLSA-modifying authority provided in 5 U.S.C. §§ 5543 and 6120-6133, the general policy directive to the FAA to create a personnel plan with “greater flexibility,” taken by itself, would not be specific and clear enough to countermand both that elimination and the clear command of the FLSA. It would have to be understood to prescribe flexibility only within otherwise-applicable clear statutory constraints, ie., only with respect to employment matters (e.g., regular pay, leave, retirement, benefits) that are not the subject of a specific command like that of 29 U.S.C. § 207(b). And the legislative history could not compel a different conclusion. Indeed, that legislative history .does not address what effect section 40122(g)(1) was meant to have apart from the continuing availability of 5 U.S.C. §§ 5543 and 6120-6133 as authority for the FAA.
2
We conclude, however, that 5 U.S.C. §§ 5543 and 6120-6133 did survive the Appropriations Act to provide continued authorization for the FAA’s departure from the FLSA. Section 40122(g)(1) plays an important role in that conclusion, which demands considerably less of the provision than a strict implied-repeal analysis.
We readily recognize that it is possible to draw the opposite conclusion from the *1374 language of 49 U.S.C. § 40122(g)(2) read in isolation: that provision says that “[t]he provisions of title 5 shall not apply to the new personnel management system ... with the exception of’ certain title 5 provisions that do not include 5 U.S.C. §§ 5543 and 6120-6133. In reaching the opposite conclusion, we rely on the need to read the provision, not in isolation, but in the context of the statutes of which it was and is a part. See, e.g., Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 290, 130 S.Ct. 1396, 176 L.Ed.2d 225 (2010); Dolan v. U.S. Postal Serv., 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006); Gustafson v. Alloyd Co., 513 U.S. 561, 568, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995); King v. St. Vincent’s Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991). We think that it is permissible to read the declaration that “[t]he provisions of title 5 shall not apply to the new personnel management system” to mean only that title 5 provisions shall not constrain the new system — thus not eliminating title 5 provisions, like sections 5543 and 6120-6133, that empower the FAA in defining the new system. In context, we think, this is the better reading of section 40122(g)(2). In any event, it is a reading available to the FAA under the discretion it has under Chevron to adopt reasonable interpretations when the statute does not unambiguously prescribe the result.
The crucial contextual support comes from two provisions. In the Appropriations Act that added 40122(g)(2), in the immediately preceding paragraph, Congress expressly directed the FAA, “notwithstanding the provisions of title 5 and other Federal personnel laws,” to develop a personnel management system that, “at a minimum, providefs] for greater flexibility in the hiring, training, compensation, and location of personnel.” 49 U.S.C. § 40122(g)(1) (emphasis added). Shortly after giving the FAA this mandate, Congress enacted the Reauthorization Act authorizing the FAA administrator to fix employee compensation. Id. § 106(0(1)-Congress directed that the administrator would not “be bound by any requirement to establish such compensation or benefits at particular levels,” except as provided in section 40122(a) and (g). Id. § 106(Z XI) (emphasis added).
The FAA undisputedly had the authority to use compensatory time and credit hours in lieu of FLSA-mandated overtime pay before the Appropriations Act was passed. The section 40122(g)(1) directive that the FAA provide “greater flexibility” must refer, for the assessment of what is “greater,” to a comparison with the pre-enactment state of authority. Reading section 40122(g)(2) to eliminate the pre-enactment authority would significantly reduce agency flexibility and so is in great tension with the “greater flexibility” directive. See Whalen v. United States, 93 Fed.Cl. 579, 594 (2010). That directive therefore supports the conclusion that what “shall not apply” in title 5 is what constrains the employer, not what authorizes the employer to depart from other constraints. Moreover, the “notwithstanding the provisions of title 5” language of section 40122(g)(1), coupled to the greater-flexibility directive, accords with that interpretation. And the language of section § 106(i)(l) strongly reinforces the interpretation in stating that the FAA is not to “be bound by any requirement” to set compensation or benefits at particular levels. 49 U.S.C. § 106(Z)(1) (emphasis added). It is reasonable to understand the section 40122(g)(2) language likewise to be limited to relieving the FAA of requirements.
The legislative histories of the Appropriations Act and Reauthorization Act provide *1375 support for this reading of section 40122(g)(2). Through the Appropriations Act, Congress sought to reform the operations of the FAA in order to “exempt[ ] the [FAA] from current procurement and personnel laws that hinder its flexibility.” H.R.Rep. No. 104-475, pt.l, at 31 (1996) (emphasis added). Certain members of Congress expressed concern about waiving the provisions of title 5 that provide employees certain safeguards, see 141 Cong. Rec. 29,362 (1995) (statement of Rep. Coleman); id. at 29,363 (statement of Rep. Obey); 141 Cong. Rec. 22,896 (1995) (statement of Sen. Glenn), but the language of concern remained in the final bill, which became law with an enumeration of only certain employee-protection provisions of title 5 that were to be mandatory. 49 U.S.C. § 40122(g)(2). The Reauthorization Act that soon followed was intended to “provide for a comprehensive overhaul of the entire FAA by giving the FAA much more autonomy.” S.Rep. No. 104-251, at 11 (1996). Thus, it was designed to provide the FAA with the “authority to develop new, innovative personnel and procurement systems, and [the ability] to waive many federal laws and regulations in the areas of personnel and procurement that inhibit the effectiveness of FAA.” Id. The contemplation of flexibility greater than before enactment supports the interpretation of section 40122(g)(2)’s “shall not apply” language to make that greater flexibility possible.
This interpretation of section 40122(g) is consistent with our decisions in Brodowy v. United States, 482 F.3d 1370 (Fed.Cir.2007), and Gonzalez v. Dep’t of Trans., 551 F.3d 1372 (Fed.Cir.2009), neither of which addressed the issue presented here. Bro-dowy involved a claim under 5 U.S.C. § 5334(b), which — despite not being listed as an exception to the general “shall not apply” language of section 40122(g)(2)— the FAA incorporated into its personnel plan. 482 F.3d at 1375. In Gonzalez, we considered whether a controller could be awarded back pay under the Back Pay Act, 5 U.S.C. § 5596, another provision of title 5 not enumerated in section 40122(g)(2) — but this one not incorporated by the FAA into its personnel management system. The court held that the controller could not seek back pay under title 5, but instead had to “comply with the agency’s own personnel management system which provides four different procedural avenues for that kind of claim.” Gonzalez, 551 F.3d at 1376. The decision thus involved a title 5 provision that would constrain the FAA if it applied, not a title 5 provision that empowers the FAA. It is thus fully consistent with the interpretation of section 40122(g) we approve here.
In short, it is reasonable to read section 40122(g)(2) as leaving in place the provisions of 5 U.S.C. §§ 5543 and 6120-6133 that authorize the FAA to depart from the otherwise-applicable commands of 29 U.S.C. § 207. And, we conclude, those are the only provisions the FAA has identified that provide such authority.
C
Given that conclusion, the validity of the challenged FAA policies on compensatory time and credit hours in lieu of FLSA overtime pay turns on whether those policies are within the authorization of 5 U.S.C. §§ 5543 and 6120-6133. The Court of Federal Claims did not resolve that issue, and the discussion at oral argument in this court confirms that the issue warrants further exploration. See, e.g., Oral Argument at 26:49-28:36, 29:15-30:25, 35:55-38:30, 40:01-42:21. We remand for that purpose. If the government on remand newly points to provisions it has not previously identified as supplying authority for the departures from the FLSA, the *1376 Court of Federal Claims should consider whether the government has adequately preserved its ability to so argue.
Accordingly we vacate the decision of the Court of Federal Claims, vacate the accompanying damages award, and remand the case for further proceedings consistent with this opinion.
No costs.

. If the claim is for no more than $10,000, district courts have concurrent jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). Regardless of the amount claimed, appellate jurisdiction lies in this court for a claim under a non-tax statute like the FLSA. Id. § 1295(a)(2) & (3).

. In addition, see, e.g., Adams v. United States, 471 F.3d 1321 (Fed.Cir.2006); Adams v. United States, 391 F.3d 1212 (Fed.Cir.2004); Berg v. Newman, 982 F.2d 500 (Fed.Cir.1992); Abren v. United States, 948 F.2d 1229 (Fed. Cir.1991); Doyle v. United States, 931 F.2d 1546 (Fed.Cir.1991); Cook v. United States, 855 F.2d 848 (Fed.Cir.1988); Lanehart v. Horner, 818 F.2d 1574 (Fed.Cir.1987); Slugocki v. United States, 816 F.2d 1572 (Fed.Cir.1987); United States v. Cook, 795 F.2d 987 (Fed.Cir.1986); Qualls v. United States, 230 Ct.Cl. 534, 678 F.2d 190 (1982). See also, e.g., Moore v. Donley, No. Civ-12-1003-HE, 2013 WL 3940898 (W.D.Okla. July 30, 2013) (granting government motion to transfer FLSA suit to Court of Federal Claims).

. That is the identification in the payment reports from 2003 to 2013, which are available, in Excel spreadsheet form, on the website of the Department of Treasury. See, e.g., All Payments Fiscal Year 2003, All Payments Fiscal Year 2008, and the 2013 Judgment Fund Transparency Report to Congress, Financial Management Service, United States Dep’t of the Treasury, available at https:// jfund.fms.treas.gov/jfradSearchWeb/JFPymt SearchAction.do, https://www.fms.treas.gov/ judgefund/congress-reports.html.

. As to the FLSA, see Pub.L. No. 101-157, 103 Stat. 938 (1989); Pub.L. No. 101-508, 104 Stat. 1388 (1990); Pub.L. No. 104-174, 110 Stat. 1553 (1996); Pub.L. No. 110-233, 122 Stat. 881 (2008). For amendments of overtime and compensatory-time provisions specific to federal employees, 5 U.S.C. §§ 5542 & 5543, see Pub.L. No. 101-509, 104 Stat. 1389, 1427 (1990); Pub.L. No. 102-378, 106 Stat. 1346, 1352 (1992); Pub.L. No. 103-329, 108 Stat. 2382, 2427 (1994); Pub.L. No. 104-201, 110 Stat. 2422, 2738 (1996); Pub.L. No. 1 OS-277, 112 Stat. 2681-102,-519, -829 (1998); Pub.L. No. 106-558, 114 Stat. 2776 (2000); Pub.L. No. 108-136, 117 Stat. 1392, 1636 (2003); Pub.L. No. 109-163, 119 Stat. 3319 (2006); Pub.L. No. 111-383, 124 Stat. 4137, 4383 (2011). For amendments to provisions concerning overtime and flexible schedules specific to federal employees, 5 U.S.C. §§ 6120-6133, see Pub.L. No. 97-221, 96 Stat. 227 (1982); Pub.L. No. 101-163, 103 Stat. 1041, 1065 (1989); Pub.L. No. 102-40, 105 Stat. 187, 240 (1991); Pub.L. No. 102-378, 106 Stat. 1346, 1352 (1992); Pub.L. No. 103-329, 108 Stat. 2382, 2423 (1994); Pub.L. No. 104-106, 110 Stat. 186, 433 (1996); Pub.L. No. 111-68, 123 Stat.2023, 2034 (2009).